UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISSAM ELIE KNICKERBOCKER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF INTERIOR, DEATH VALLEY NATIONAL PARK, NATIONAL PARK SERVICE, NICOLE GRUVER and BRYAN DREW, PREVIOUSLY NAMED AS UNKNOWN PARK RANGER AGENTS 1 and 2, and DOES 3–25,<br><br>Defendants. | No. 1:16-cv-01811-DAD-JLT<br><br>ORDER DENYING MOTION TO DISMISS<br><br>(Doc. No. 37) |

Plaintiff is proceeding on a first amended complaint ("FAC") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In his FAC, plaintiff alleges that various constitutional and tort violations occurred during his arrest in Death Valley National Park by two park rangers, defendants Gruver and Drew. (Doc. No. 33.) This court previously dismissed plaintiff's original complaint with leave to amend on October 4, 2017. (Doc. No. 27.) Defendant United States now moves to dismiss the FAC, asserting that plaintiff fails to state a claim on which relief can be granted. (Doc. No. 37.) The government also seeks to introduce body camera evidence of the arrest to justify dismissal of the case, despite its current procedural posture. (*Id.*) A hearing on the pending motion was held on January 9, 2018.

Assistant U.S. Attorney Gregory Broderick appeared telephonically at the hearing on behalf of defendant United States. Attorney Richard Knickerbocker appeared telephonically on behalf of plaintiff. For the reasons set forth below, the court will deny the motion to dismiss brought on behalf of defendant United States of America.

**BACKGROUND**

The salient factual allegations of the FAC are as follows. On February 20, 2016, plaintiff and two friends travelled to Death Valley National Park to photograph the "super-bloom" of wildflowers. (Doc. No. 33 at ¶ 13.) Plaintiff drove his car, and the group parked legally along the side of the road near Badwater Basin. (*Id.* at ¶¶ 13–14.) When plaintiff returned to his car, two park rangers were nearby, and stopped the group to ask who owned the car and for identification. (*Id.* at ¶ 15.) After identifying himself as the owner, plaintiff refused a request from the rangers to search his car. (*Id.*) The rangers then asked for identification from the group, which was produced. (*Id.*) At that time, there was no indication any crime had been committed, as plaintiff's car was validly registered, plaintiff was not driving, and plaintiff was not engaged in any illegal activity. (*Id.* at ¶ 16.) Following the receipt of his identification, plaintiff was subsequently handcuffed with his hands behind his back. (*Id.* at ¶ 18.) At some point later, the rangers told plaintiff he had an outstanding warrant in Los Angeles for a traffic violation, though plaintiff alleges he has never been shown evidence that such a warrant existed. (*Id.* at ¶¶ 16–17, 19.)

In the process of being handcuffed by the rangers, plaintiff "felt his shoulder to be temporarily or partially dislocated and or sliding from its socket," and it was ultimately discovered he suffered a torn rotator cuff during this process. (*Id.* at ¶ 18.) Immediately upon being handcuffed and for the subsequent two hours, plaintiff complained to the rangers about the pain and discomfort he felt in his shoulder, and repeatedly asked the ranger to loosen the handcuffs, handcuff his arms in front of his body, connect two pairs of handcuffs together, or find some other method of detaining him that would relieve the pain in his shoulder. (*Id.* at ¶ 23.) The rangers refused, asserting that the handcuffs were required for their safety and that they were not authorized to restrain him in another manner. (*Id.*) Plaintiff alleges he remained in restraints

for at least two hours until another ranger—apparently the supervisor of Rangers Gruver and Drew—arrived. (*Id.* at ¶ 24.) Upon the supervisor's arrival, plaintiff advised him of the pain he was experiencing, and the supervisor placed plaintiff in belly chain handcuffs and allowed him to use the police car to push his shoulder back into place, which relieved the pain in plaintiff's shoulder. (*Id.*) Because of the manner in which he was restrained, plaintiff ultimately underwent surgery for a subacromial decompression to repair tears in the labrum and the rotator cuff, a procedure which will need to be repeated approximately every ten years for the rest of his life. (*Id.* at ¶¶ 18, 29–30.) Plaintiff's range of motion with his shoulder is limited and he is partially disabled as a result of the restraints in which he was placed. (*Id.* at ¶ 31.)

During the period in which he was restrained, the arresting rangers took away plaintiff's phone, wallet, socks, and shoes and searched him multiple times. (*Id.* at ¶ 19.) The rangers threatened to have plaintiff's car impounded, despite the presence of plaintiff's friends who could have driven the car away. (*Id.* at ¶ 20.) Plaintiff alleges defendant Gruver appeared to be agitated throughout the encounter. (*Id.* at ¶ 21.) According to the FAC, the rangers arrested plaintiff and treated him in the manner they did because of his race and ethnicity and in retaliation for his refusing to consent to a search of his vehicle. (*Id.* at ¶¶ 15, 23.) Eventually, plaintiff was transported by defendant Gruver to a rendezvous with an officer from the Inyo County Sheriff's Department, who transported plaintiff to the Inyo County Jail. (*Id.* at ¶ 27.)

The FAC presents the following claims: (1) a *Bivens* claim against the individual rangers for excessive use of force in violation of the Fourth Amendment; (2) a *Bivens* claim against the individual rangers for unreasonable search and seizure in violation of the Fourth Amendment; (3) battery against all defendants; (4) intentional infliction of emotional distress against all defendants; and (5) negligence against the United States. (*Id.* at ¶¶ 33–69.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on such a motion, the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

**ANALYSIS**

**A.     Claims Against the Individual Defendants**

As with the previously heard motion to dismiss, this motion is brought solely by defendant United States. Defendants Gruver and Drew, who were the Doe Defendants One and Two named in the original complaint and are now identified in the FAC, had not been served at

4

the time of the hearing on this motion. As discussed at the hearing, counsel for the government indicated that, if defendants Gruver and Drew agreed, he would represent them and at that point could accept service of the complaint on their behalf. On February 8, 2018, plaintiff's counsel filed a declaration indicating that defense counsel had since advised him that defense counsel had been authorized to accept service in this matter on behalf of defendants Gruver and Drew. (Doc. No. 52 at ¶ 4.) The declaration also indicates the parties have agreed that defendants will have twenty-one (21) days following the issuance of this order to file a responsive pleading. (*Id.* at ¶ 5.) Since issues related to service in this case have apparently been resolved, the court will direct that defendants file a responsive pleading within twenty-one days of the date of service of this order.

**B.    Battery**

Turning to the substantive claims in this case, the United States argues plaintiff has failed to allege sufficient facts to establish a battery occurred because he may not allege a claim that is based merely on the fact of his arrest or handcuffing. (Doc. No. 37-1 at 4–5.) Plaintiff's battery claim is not, however, based on the mere fact of his arrest or handcuffing. Rather, it is based on the manner in which these actions were allegedly carried out. As previously explained, a plaintiff may state a battery claim against a law enforcement officer in California[1] if they can allege and show the use of unreasonable force. *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1129 (9th Cir. 2010) ("Under California law, a plaintiff bringing a battery claim against a law enforcement official has the burden of proving the officer used unreasonable force."); *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008) (holding "we cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct," and therefore a common law battery claim "requires proof that [the officer] used unreasonable force"); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998). As such, the court turns to the law governing claims of the excessive use of force under the Fourth Amendment.

---

[1] The FTCA requires district courts to look to the law of the state in which the court sits to determine the liability of the United States under the FTCA. *See Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006); *Schwarder v. United States*, 974 F.2d 1118, 1121–22 (9th Cir. 1992).

5

A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985); *Smith v. Clark County*, 828 F.3d 910, 920 (9th Cir. 2016). Under this standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the need for force which is at the heart of the *Graham* factors.'" *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (quoting *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994)); *see also Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002). Thus, in light of the facts and circumstances surrounding a law enforcement officer's actions, courts "must balance the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (citations and internal quotations omitted); *see also Scott v. Harris*, 550 U.S. 372, 383–84 (2007); *Smith*, 828 F.3d at 920; *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *Deorle v. Rutherford,* 272 F.3d 1272, 1280 (9th Cir. 2001); *Liston*, 120 F.3d at 976. "Force is excessive when it is greater than is reasonable under the circumstances." *Santos*, 287 F.3d at 854 (citing *Graham*, 490 U.S. 386). Accordingly,

> [a]lthough it is undoubtedly true that police officers are often forced to make split-second judgments, and that therefore not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers is a violation of the Fourth Amendment, it is equally true that even where some force is justified, the amount actually used may be excessive.

*Id.* at 853 (citations and internal quotations omitted); *see also Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013); *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

A non-exhaustive list of the circumstances considered in determining whether excessive force was used includes: (1) the severity of the crime alleged to be committed or in the process of commission; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396; *Smith*, 828 F.3d 920; *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014); *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002). A reasonableness inquiry must be objective and

"without regard to the officer's good or bad motivations or intentions." *Billington*, 292 F.3d at 1184. Further, reasonableness is to be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and should allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* Officers are not required to "'avail themselves of the least intrusive means of responding' and need only act 'within that range of conduct we identify as reasonable.'" *Id.* at 1188–89 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

The manner in which an individual is handcuffed may amount to excessive force. *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("It is well-established that overly tight handcuffing can constitute excessive force."); *Nyla Moujaes v. San Francisco City & County*, No. 15-cv-03129-DMR, 2016 WL 4702671, at *7 (N.D. Cal. Sept. 8, 2016) ("[A]n officer may be liable for excessive force if he or she handcuffs a suspect in a tight or painful manner and ignores complaints of pain."). Courts routinely allow excessive force claims to proceed where the injuries are caused by handcuffing and the suspect was believed to have committed a non-violent offense, was not an immediate threat to the safety of officers or others, and was not attempting to resist arrest. *See Jones v. Gardiner*, No. 14cv2477-MMA (MDD), 2016 WL 1465172, at *3–4 (S.D. Cal. Apr. 14, 2016); *Dewey v. Adams*, No. CV 2:12-09493-VBF (PLA), 2014 WL 3420801, at *11–13 (C.D. Cal. July 9, 2014); *Spies v. City of Scottsdale*, No. CV 12-1020 PHX DGC, 2013 WL 1339896, at *5–6 (D. Ariz. Apr. 1, 2013) (denying motion to dismiss where plaintiff had voluntarily agreed to submit to a blood test for alcohol but was handcuffed and lost feeling in her hands); *Lefever v. Nicholson*, No. 2:10-cv-01917-MMD-PAL, 2013 WL 1068817, at *3–4 (D. Nev. Mar. 14, 2013) (denying defendants' motion for summary judgment even though allegedly tight handcuffs were only on the plaintiff for eight to fifteen seconds and plaintiff had voluntarily submitted to handcuffing); *see also Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) (noting the most important factor in determining the reasonableness of force used is whether the individual "posed an 'immediate threat to the safety of the officers or others'") (quoting *Bryan*, 630 F.3d at 826).

Here, plaintiff was apparently detained pursuant to a warrant for a traffic violation. He posed no apparent threat to the officers, as the FAC alleges he was "at all times fully compliant and was calm and proper and cooperative." (Doc. No. 33 at ¶ 21.) Indeed, the facts as alleged do not indicate he resisted arrest in any way. (*Id.* at ¶ 18) (noting plaintiff turned around and placed his hands behind his back on request). Moreover, given the location of the arrest—near Badwater Basin in Death Valley National Park—plaintiff was unlikely to be a flight risk. The manner in which plaintiff was handcuffed is alleged to have partially dislocated his shoulder, necessitating surgery and rendering him at least partly permanently disabled.[2] Because a reasonable jury could conclude that the rangers used excessive force against plaintiff in the circumstances alleged here, the motion to dismiss the battery claim will be denied.

While the court concludes the FAC contains sufficient factual allegations to state a claim of battery, the United States also moves for dismissal on a different ground. The United States provided this court with numerous videos from the body cameras of Rangers Gruver and Drew, totaling several hours of footage, and requested that the court consider this evidence in ruling on the motion to dismiss, pursuant to the Supreme Court's holding in *Scott*, 550 U.S. 372. (Doc. No. 37-1 at 1.) Alternatively, the United States suggests this court should take judicial notice of these videos. (*Id.* at 7.) Finally, the United States argues that, even if this evidence is found to be inadmissible in the context of a Rule 12 motion, the court can convert the instant motion to a Rule 56 motion and grant summary judgment in its favor. (*Id.*) For the following reasons, the court declines to adopt the government's suggestions.

*Scott* concerned an excessive force claim decided on summary judgment. 550 U.S. at 378. In that case, a dash camera video of a car chase resulting in plaintiff's injuries was before the court on summary judgment. *Id.* at 378–79. The video told "quite a different story" from the one recounted by plaintiff in opposition to summary judgment. *Id*. The Supreme Court held that in that case, the Court of Appeals "should have viewed the facts in the light depicted by the

---

[2] The United States asserts that this case differs from a "typical 'tight handcuffs' case" in that it "involves a less-intuitive injury to [plaintiff's] shoulder." (Doc. No. 44 at 4.) Defendant points to no authority suggesting that the precise injury caused by allegedly overly tight handcuffing is relevant to plaintiff's ability to state a claim.

8

videotape," because the video evidence was so clear that no reasonable jury could have believed plaintiff's version of the events. *Id.* at 380–81.

The most obvious distinction between *Scott* and the instant case is also the most significant: *Scott* concerned a motion for summary judgment brought under Rule 56, while the motion before this court is one seeking dismissal under Rule 12. The United States argues that "there does not appear to be any reason *Scott* would not also apply on a motion to dismiss," because "[t]he purpose of making allegations in a complaint is to demonstrate what Plaintiff would prove; but *Scott* precludes a Plaintiff from contradicting video evidence." (Doc. No. 37-1 at 7.) However, the decision in *Scott* does not preclude a plaintiff from contradicting video evidence: it instead instructs courts to *consider* video evidence in determining whether a reasonable jury could find for the non-moving party and notes that, in some cases, video evidence may overwhelm testimony that is directly contradictory. 550 U.S. at 380–81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). Certainly, at summary judgment, this court will consider the video evidence along with all other evidence presented. However, it is a well-established that "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee*, 250 F.3d at 688 (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). Accordingly, *Scott* does support the proposition that the court should consider the proffered video evidence in ruling on the pending motion to dismiss brought under Rule 12(b)(6).[3]

Taking judicial notice of the videotape evidence is also inappropriate here. A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately

---

[3] As discussed at the hearing, the government's assertion that the video evidence fully discredits the allegations in the complaint is noted. Plaintiff's counsel is strongly encouraged to view the video evidence with plaintiff to determine whether plaintiff can proceed with this case in good faith. Pursuing litigation without evidentiary support for the allegations made may result in the imposition of sanctions. *See* Fed. R. Civ. P. 11(b)(3); *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153–54 (9th Cir. 2002); *Ass'n of Women with Disabilities Advocating Access v. Mouet*, No. 06cv2240 JM(LSP), 2007 WL 951837, at *2–3 (S.D. Cal. Mar. 23, 2007).

9

and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This has been understood to mean that courts "may take judicial notice of 'matters of public record.'" *Lee*, 250 F.3d at 689 (quoting *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). However, a court may only take judicial notice of those matters contained in public records which are undisputed. *Id.* at 690. The government does not merely wish the court to take judicial notice of the fact that these videos exist: it requests the court take judicial notice of the contents of the video to purportedly show that the defendant rangers did not employ excessive force. This obviously is disputed by plaintiff, and is far beyond the usual purposes of judicial notice. Accordingly, the court declines to grant the government's request that judicial notice be taken.

Finally, the court sees no reason to convert the instant motion to a Rule 56 summary judgment motion. "Whether to convert a 12(b)(6) motion to one for summary judgment is within the discretion of the district court." *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1150 (E.D. Cal. 2009); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 450 (E.D.N.Y. 2007) ("[A] district court is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint in support of a 12(b)(6) motion."); *see also Estate of Edward Idzior v. Medsolutions, Inc.*, 788 F. Supp. 2d 1203, 1206 n.1 (D. Nev. 2011); *Brown v. Bartholomew*, No. 2:07-cv-07144-FMC-SHx, 2008 WL 11338291, at *1 (C.D. Cal. 2008); *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 202 (D. Conn. 2007). An initial scheduling conference has not yet been held in this action and formal discovery has not yet opened. Plaintiff notes in his opposition to the pending motion that he has not yet been able to view all of the videos of the incident, that the recordings do not cover the entire incident in question, and that portions of the recording include inaudible conversation. (Doc. No. 42 at 8–9.) Because discovery has not yet opened, plaintiff presumably has been unable to depose the rangers to seek clarification on these points. All of these considerations suggest that deferring the court's consideration of this evidence is appropriate until a later stage of this litigation.

/////

10

### B. Intentional Infliction of Emotional Distress

The United States asserts plaintiff has failed to allege sufficient facts to state a claim for intentional infliction of emotional distress ("IIED") here, because he has only alleged that he was arrested, his handcuffs were placed on too tightly, and that he told rangers his shoulder was "slipping." (Doc. No. 37-1 at 4.) While these may have been the factual allegations in plaintiff's original complaint, the FAC alleges plaintiff was handcuffed, felt his shoulder partially dislocate, and repeatedly requested that the rangers aid him by loosening the handcuffs or finding some other method of restraining him. (Doc. No. 33 at ¶¶ 23–24.) The manner in which plaintiff was restrained allegedly caused a torn rotator cuff and required surgery to repair. (*Id.* at ¶¶ 18, 29–30.) It has also allegedly caused a permanent partial disability. (*Id.* at ¶ 31.) As previously noted, while the court may conclude certain conduct is insufficiently outrageous to support a claim for IIED as a matter of law, *see Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (1982), this is most commonly determined to be a factual issue, *Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 672 (2013). Here, based on the allegations of the FAC, it could be found that injuring plaintiff in the manner alleged was "extreme and outrageous conduct" that was done with "reckless disregard" for the probability of causing emotional distress. *Ravel v. Hewlett-Packard Enterprise, Inc.*, 228 F. Supp. 3d 1086, 1099 (E.D. Cal. 2017) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). Therefore, the court will deny the motion to dismiss this claim.

### C. Negligence

Lastly, the United States seeks dismissal of plaintiff's negligence claim because the FAC, "while rife with allegations of intentional conduct, does not allege any carelessness or error, which is the hallmark of any negligence claim." (Doc. No. 37-1 at 3.) Generally, the FTCA states that the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see also McCall v. U.S. Dep't of Energy*, 914 F.2d 191, 193 (9th Cir. 1990) (noting the FTCA extends liability to the United States for acts of its employees but not those of independent contractors). Liability is therefore imposed on the federal government so long as there is a reasonable analogue to a tort for which liability would be imposed on a private actor under the law of the state in which the act occurred. *See PW*

*Arms, Inc. v. United States*, 186 F. Supp. 3d 1137, 1143 (W.D. Wash. 2016). "Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy." *LaBarge v. Mariposa County*, 798 F.2d 364, 367 (9th Cir. 1986).

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013). Law enforcement officers in California may breach a duty when they either engage in "an affirmative act which places the person in peril or increases the risk of harm" or "an omission or failure to act." *Williams v. California*, 34 Cal. 3d 18, 24 (1983) (citing *McCorkle v. Los Angeles*, 70 Cal. 2d 252 (1969) and *Morgan v. County of Yuba*, 230 Cal. App. 2d 938 (1964)). Here, in his FAC plaintiff alleges the officers handcuffed him in a manner that caused serious injury to his shoulder, and then failed to change the manner in which he was being restrained to relieve the pain or injury despite being told about it. (Doc. No. 33 at ¶¶ 18, 23–24, 29–30.) Plaintiff alleges that both that the rangers intentionally harmed him and, in the alternative, acted negligently by failing to "protect him from unreasonable risks of harm," failing to provide medical care, and refusing to loosen the handcuffs or use another method of detention despite it being readily available. (Doc. No. 33 at ¶¶ 66–67.) Defendant United States cites no authority for the proposition that intentional and negligent conduct cannot be pleaded in the alternative. *See Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) ("In light of the liberal pleading policy embodied in Rule 8(e)(2), we hold that a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case under the circumstances present here."). If plaintiff's factual allegations are ultimately proven, the question of whether the rangers acted because they intentionally wished to harm plaintiff or because they were negligent in failing to heed his calls for help—or neither—will be a question for the jury to decide. The court concludes plaintiff has alleged sufficient facts in his FAC to give rise to a plausible claim for negligence. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

/////

/////

**CONCLUSION**

For the foregoing reasons, the motion to dismiss (Doc. No. 37) is denied. Defendants shall file a responsive pleading within **twenty-one (21) days** of the date of service of this order.

IT IS SO ORDERED.

Dated: __**February 12, 2018**__

_____
UNITED STATES DISTRICT JUDGE