1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ISSAM ELIE KNICKERBOCKER,                    No. 1:16-cv-01811-DAD-JLT

12                    Plaintiff,

13            v.                                    ORDER GRANTING DEFENDANTS'
                                                    MOTION FOR SUMMARY JUDGMENT
14    UNITED STATES OF AMERICA, et al.,
                                                    (Doc. No. 91)
15                    Defendants.

16

17           This matter is before the court on a motion for summary judgment brought on behalf of

18    defendants United States of America, Nicole Gruver, and Brian Drew (collectively,

19    "defendants").[1]  (Doc. No. 91.)  A hearing on the motion was held on September 4, 2019.

20    Attorney Richard Knickerbocker appeared telephonically on behalf of plaintiff Issam

21    Knickerbocker ("plaintiff"), and Assistant U.S. Attorney Joseph Frueh appeared telephonically on

22    behalf of defendants.  The court has considered the parties' briefs and oral arguments, and for the

23    reasons set forth below, will grant defendants' motion for summary judgment.

24    /////

---

25    [1] An additional defendant—United States Department of the Interior Park Service, Death Valley
26    National Park—appears on the docket in this action, but the parties agree that the court lacks
      subject matter jurisdiction over this defendant, and plaintiff's first amended complaint does not
27    assert claims against it.  (*See* Doc. Nos. 91-1 at 26 n.9; 93 at 26 n.22.)  Accordingly, the United
      States Department of the Interior Park Service, Death Valley National Park is terminated from
28    this action.

                                                   1

The material facts of this case are undisputed and will be set forth here. On February 20, 2016, while driving through the Bad Water Basin area of Death Valley National Park, defendants Park Service rangers Brian Drew and Nicole Gruver noticed a vehicle parked on the side of the road with a white object on the roof which ranger Gruver understood to be a drone controller. (Doc. No. 93-1) (Plaintiff's Statement of Disputed Facts ("PSDF") at 1–2.)[2] Upon approaching the vehicle, the rangers learned that plaintiff was the owner of the vehicle and that he and his friends were attempting to locate a drone that they had lost. (*Id.* at 2–3, 26.) The rangers asked plaintiff and his friends for their driver's licenses and each of them provided their identification to the rangers. (*Id.* at 27.) Although plaintiff disputes the existence and validity of the warrant, the parties agree that a police dispatcher informed the rangers over the radio that plaintiff had an active arrest warrant stemming from a traffic violation in Los Angeles County, and that the county wanted the rangers to take plaintiff to a local jail for eventual transfer to Los Angeles. (*Id.* at 30, 34.)

Shortly thereafter, ranger Drew handcuffed plaintiff behind his back and both rangers waited for their supervisor to arrive and assist with transporting plaintiff. (*Id.* at 35, 42–43.) From around the time that plaintiff was first handcuffed to when the rangers' supervisor arrived approximately fifty-five minutes later, plaintiff complained to the rangers several times about the handcuffs causing him pain, both in his wrists and his shoulder. (*Id.* at 35–92.) The rangers attempted to alleviate plaintiff's wrist pain by attaching two sets of handcuffs together to secure plaintiff's hands instead of one. (*Id.*) They informed plaintiff, however, that they could not reposition his arms to the front of his body until their supervisor arrived with a belly chain. (*Id.* at 63–64.) The rangers' supervisor eventually arrived with a belly chain for transporting arrestees. (*Id.* at 92.) The rangers employed the belly chain, repositioned plaintiff's hands to the front of his body, and transported him to Inyo County Jail in Independence, California. (*Id.* at 96–99.)

---

[2] Both parties have submitted separate statements of undisputed facts. (*See* Doc. Nos. 91-2, 93-1.) The court will cite to plaintiff's statement of undisputed facts, which includes his responses to defendant's statement of undisputed facts. (*See generally* Doc. No. 93-1.)

In this civil action, plaintiff asserts Fourth Amendment claims against the rangers, arguing that (1) they used excessive force in detaining, handcuffing, and arresting him and (2) they unreasonably searched and seized him. (Doc. No. 33 at 12–14.) Plaintiff also asserts state law claims for battery and intentional infliction of emotional distress against all defendants and a negligence claim against defendant United States. (*Id.* at 14–19.) Plaintiff alleges that he suffered various injuries as a result of this incident, including an injury to his shoulder causing partial but permanent disability. (Doc. No. 33 at 11–12.)

On July 16, 2019, defendants moved for summary judgment. (Doc. No. 91.) On August 6, 2019, plaintiff filed his opposition to the pending motion, and on August 14, 2019, defendants filed their reply thereto. (Doc. Nos. 93, 95.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11;

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ANALYSIS

### A.    The Court will Consider the Body Camera Footage

Attached to defendants' pending motion for summary judgment is footage from the rangers' body cameras, which depicts the events that give rise to plaintiff's claims in this action,

namely his detention and subsequent handcuffing and arrest on February 20, 2016. (*See* Doc. Nos. 90, 92.) Plaintiff objects to the admissibility of the footage, arguing that the recordings are hearsay, not properly authenticated, and lack foundation, and that the rangers lack personal knowledge. (Doc. No. 93-17 at 4–7, 9–11); *see also See P.A. v. United States*, No. 5:10-cv-02811-PSG, 2013 WL 3864452, at *5 (N.D. Cal. July 24, 2013) ("Evidence offered to support a motion for summary judgment must be able to be presented 'in admissible form at trial.'") (quoting *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)). In this regard, plaintiff argues that: (1) the rangers' declarations "grossly fail[]" to authenticate the footage; (2) neither is competent to authenticate the footage; and (3) that there is no evidence regarding chain of custody, or "certification from anybody concerning the authenticity of the DVDs." (*Id.*) The court is not persuaded by plaintiff's arguments.

As an initial matter, the body camera footage at issue is not subject to the rule against hearsay because the videos are not statements presented for the truth of the matter asserted. *See* Fed. R. Evid. 801(a). The video evidence at issue constitute

> visual depictions and do not constitute a "statement" intended to be an "assertion." It would be different if Plaintiff[] identified a particular phrase spoken by one of the actors, and argued it was being presented for the truth of the matter stated, but Plaintiff ha[s] not done so here. The hearsay rule therefore does not apply.

*P.A.*, 2013 WL 3864452, at *5. Moreover, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Examples of evidence that satisfy this requirement include testimony "that an item is what it is claimed to be" and evidence that "was recorded or filed in a public office as authorized by law" or "is from the office where items of this kind are kept." *Id.* at 901(b). Here, the body camera footage has been properly authenticated. First, both rangers Drew and Gruver declare that they: have personal knowledge of the events depicted in the footage; were patrolling the Bad Water Basin area of Death Valley National Park on the day plaintiff was detained and arrested; stopped plaintiff and his friends to ask them questions; and recorded the majority of the encounter—and the entirety of it with respect to the events giving rise to plaintiff's claims—on their body cameras. (Doc. No.

91-3 at 2–4; 91-5 at 2–4.)  Both rangers also declare that "[a] true and correct copy" of the footage of their encounter with plaintiff is attached as an exhibit to their declarations.  (Doc. No. 91-3 at 4; 91-5 at 4.)  The court finds that the rangers' declarations establish the authenticity of the body camera footage because the declarants have personal knowledge of the events depicted in the footage.  Second, in opposition to the pending motion, plaintiff acknowledges that "the incident of February 20, 2016[] is reflected on DVDs that the Defendants have lodged in conjunction with their motion for summary judgment" and that he will therefore "not reiterate the entire encounter in this declaration."  (Doc. No. 93-2 at 1); (*see also id.* at 3) (Noting that "[t]he events that transpired . . . are reflected on the video and audio recordings of the rangers' videocams"); *Sukiasyan v. Target Corp.*, No. 2:18-cv-10356-R-GJS, 2019 WL 7205991, at *2 (C.D. Cal. Nov. 27, 2019) (overruling the plaintiff's objections regarding the authenticity of video evidence where (1) the declarants sufficiently explained the basis for their personal knowledge and (2) plaintiff "concede[d] that [the video evidence] . . . [was a] true and accurate depiction[] of Plaintiff's fall and the moments before and after"); *Delpriore v. McClure*, No. 3:18-cv-00113-SLG, ___F. Supp. 3d___, 2020 WL 50371, at *9 (D. Alaska Jan. 3, 2020) (considering security video footage on summary judgment under the business records exception in an excessive force case).

Accordingly, because the body camera footage does not constitute hearsay, defendants have properly authenticated the body camera footage, and because plaintiff agrees that the footage reflects the events giving rise to his claims, the footage will be considered for the purposes of resolving the pending motion for summary judgment.

**B.      Plaintiff's Excessive Force Claim Fails as a Matter of Law**

Defendants Drew and Gruver first move for summary judgment in their favor on plaintiff's claim alleging that they used excessive force in detaining and arresting him.

A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  A non-exhaustive list of the circumstances considered in determining whether excessive force was used includes:  (1) the severity of the crime alleged to

be committed or in the process of commission; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to flee. *Id.* at 396; *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 605 (9th Cir. 2016); *Smith v. Clark County*, 828 F.3d 910, 920 (9th Cir. 2016); *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014); *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). A reasonableness inquiry must be objective and without regard to the officer's good or bad motivations or intentions. *Graham*, 490 U.S. at 397. Further, reasonableness is to be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "Officers 'need not avail themselves of the least intrusive means of responding to [a] . . . situation; they need only act within that range of conduct [that courts] identify as reasonable." *Glenn v. Washington*, 673 F.3d 864, 876 (9th Cir. 2011) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)); *see also S.R. Nehad v. Browder*, 929 F.3d 1125, 1138 (9th Cir. 2019) ("Police need not employ the least intrusive means available; they need only act within the range of reasonable conduct.").

Under this standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the need for force which is at the heart of the *Graham* factors.'" *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (quoting *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994)); *see also Velazquez v. City of Long Beach,* 793 F.3d 1010, 1024–26 (9th Cir. 2015); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003). Thus, in light of the facts and circumstances surrounding a law enforcement officer's actions, courts "must balance the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (citations and internal quotations omitted); *see also Scott v. Harris*, 550 U.S. 372, 383–84 (2007); *Smith*, 828 F.3d at 920; *Velazquez*, 793 F.3d 1024; *Liston*, 120 F.3d at 976. "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing *Graham*, 490 U.S. 386). Accordingly, "even where some force is justified, the amount actually used may be excessive." *Id.* at 853.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Moreover, "[t]he use of handcuffs during an arrest is quite common and often a 'standard practice'" and, "[o]rdinarily, the use of handcuffs during an arrest is a very low quantum of force that will not constitute excessive force." *McFarland v. City of Clovis*, No. 1:15-cv-01530-AWI-SMS, 2017 WL 1348934, at *13 (E.D. Cal. Apr. 10, 2017) (citing *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)); *see also Simon v. McMahon*, 2019 WL 3059581, *7 (C.D. Cal. May 1, 2019) ("Simple handcuffing is not, by itself, excessive force.") (quoting *Hoffman v. City of Los Angeles*, No. CV 15-03724-FMO (ASx), 2016 WL 4698939, at *7 (C.D. Cal. Jan. 5, 2016)), *report and recommendation adopted* 2019 WL 3059499 (C.D. Cal. June 14, 2019); *Dillman v. Tuolumne County*, No. 1:13-CV-00404 LJO SKO, 2013 WL 1907379, at *7 (E.D. Cal. May 7, 2013) ("The mere application of handcuffs during the course of an arrest does not, in and of itself, give rise to a section 1983 claim for excessive force" because "[t]he right to make an arrest carries with it the right to use 'some degree of physical coercion.'") (and cases cited therein).

Nevertheless, the manner in which an individual is handcuffed may, under some circumstances, amount to excessive force. *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("It is well-established that overly tight handcuffing can constitute excessive force."); *LaLonde v. County of Riverside*, 204 F. 3d 947, 960 (9th Cir. 2000); *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322–23 (9th Cir. 1995) (holding that an excessive force claim was possible against officers that handcuffed the plaintiff for 45 minutes after officers noticed his wrists were "mushy" or "soft" and the plaintiff told officers he was a dialysis patient, that the handcuffs were too tight and asked for them to be removed or loosened, but the officers did not adjust them for 35 to 40 minutes); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–36 (9th Cir. 1993) (holding that an officer used unreasonable force when he handcuffed a cooperative 67-year-old drunk driving suspect, who had recently suffered a stroke that impaired his mobility, and applied them so tightly that the man suffered pain and bruising for weeks despite his telling the officer they were too tight ); *Nyla Moujaes v. San Francisco City & County*, No. 15-cv-03129-DMR,

2016 WL 4702671, at *7 (N.D. Cal. Sept. 8, 2016) ("[A]n officer may be liable for excessive force if he or she handcuffs a suspect in a tight or painful manner and ignores complaints of pain.").

Here, defendants Drew and Gruver contend that they are entitled to summary judgment in their favor on plaintiff's excessive force claim because the undisputed evidence before the court on summary judgment establishes that they used reasonable force to simply handcuff plaintiff after placing him under arrest. (Doc. No. 91-1 at 16–20.) Plaintiff counters that the use of force was unreasonable under clearly established law. (Doc. No. 93 at 11.) The video footage of plaintiff's arrest, as captured by the rangers' body cameras, reveals the following sequence of relevant events:

At about 11:34 a.m. on February 20, 2016, ranger Gruver requested and obtained driver's licenses from plaintiff and his friends. Gruver Video 19:34.[3] Thereafter, the rangers learned that plaintiff had an active arrest warrant from Los Angeles County and that the county wanted the rangers to take plaintiff to a local jail for eventual transfer to Los Angeles. *Id.* at 19:46. The rangers' supervisor radioed in and informed them that he was on his way to assist in transporting plaintiff. *Id.* at 19:47.

Ranger Drew asked plaintiff to step away from his friends, explained that he had an outstanding warrant stemming from a traffic incident, asked him to place his hands behind his back, and placed handcuffs on his wrists. Drew Video at 19:48–19:49. Plaintiff immediately stated that the handcuffs were hurting him. *Id.* at 19:49. Plaintiff informed Gruver that the handcuffs were uncomfortable, and asked whether they could be moved to the front of his body. Gruver Video at 19:52–19:53. Ranger Gruver told plaintiff that the rangers would reposition his handcuffs to the front of plaintiff's body once their supervisor arrived, and that they had to be mindful of their safety in the situation. *Id.* at 19:53. Plaintiff again noted that his wrist was in "a lot of pain" and that "nobody is helping me out" and stated that it felt like his wrists were chafing.

---

[3] Both the video obtained from ranger Gruver's body camera as well as the one obtained from ranger Drew's body camera display a 24-hour timestamp in Greenwich Mean Time ("GMT"). The court will reference the GMT timestamp when citing to a specific part of either of the recordings.

*Id.* at 19:54–19:55. To alleviate any pain that plaintiff might be experiencing, ranger Drew proposed attaching two sets of handcuffs together to secure plaintiff's hands behind his back instead of one, and ranger Gruver provided ranger Drew with her handcuffs. *Id.* at 19:55. After attaching the second set of handcuffs and securing plaintiff, ranger Drew asked plaintiff "How's your right hand?" and plaintiff replied "My right hand is great." *Id.* at 19:58. Drew then asked about plaintiff's left hand, to which plaintiff replied that "My left hand just feels tight." *Id.* Drew then readjusted plaintiff's left handcuff and asked, "Is that better?," to which plaintiff replied, "Yeah, it feels better." Drew Video at 19:58.

At 12:12 p.m. plaintiff complained to ranger Drew, again asking if it was possible to cuff his hands in front of him as opposed to behind him, so as to not hurt his shoulder. Drew Video at 20:12. Ranger Drew explained that he could not handcuff plaintiff's hands in front due to policy, to which plaintiff responded, "OK, that's fine. Can't argue with policy." *Id.* Ranger Drew asked plaintiff to rate his pain level on a scale of one to ten, and plaintiff said "nine, eight—it's very unpleasant." *Id.* at 20:21. Ranger Drew asked plaintiff if he had shoulder problems, and plaintiff stated that he did, noting that he "screwed up" his arms and shoulders playing lacrosse.[4] *Id.* Plaintiff again complained that the handcuffs were irritating his right wrist, and ranger Gruver thereafter adjusted that handcuff and asked if the adjustment made things better, to which plaintiff replied, "Way better, way better." Gruver Video at 20:13–20:14. Ranger Drew examined the right handcuff and found that he could pass his finger between the handcuff and plaintiff's wrist. Drew Video at 20:15–20:16.

At 12:32 p.m., approximately fifty minutes after the handcuffs had first been applied, the rangers' supervisor arrived with a belly chain. Gruver Video at 20:36–20:38. Ranger Drew and his supervisor transferred plaintiff to a belly chain and repositioned his hands to the front of his

---

[4] The court notes that in his responses to defendants' interrogatories, plaintiff noted that "he never had any personal injury or illness related to his shoulder or of the type involved in this lawsuit prior to the date of the incident." (Doc. No. 91-10 at 3); (*see also* Doc. No. 91-8 at 18–19) (plaintiff stating that his responses to defendants' interrogatories were true). Plaintiff now declares that he told ranger Drew that he had a prior shoulder injury "out of desperation" and notes that he "would have said anything at that point if [he] thought it would have made them alleviate the pressure on my wrists and shoulders." (Doc. No. 93-2 at 4.)

body. Drew Video at 20:42–20:43. Thereafter, ranger Gruver and her supervisor transported plaintiff to the ranger station.

Based on the body camera footage, the rangers argue that plaintiff's handcuffing was a "marginal intrusion" involving a "very low quantum of force." (Doc. No. 91-1 at 17.) The rangers note that: plaintiff was not forced to position his arms behind his back, but rather that he voluntarily complied with ranger Drew's request; ranger Drew attached another set of handcuffs upon learning of plaintiff's initial reports of discomfort; plaintiff confirmed that this as well as other adjustments alleviated his initial discomfort; the rangers continued to check in with plaintiff and inquire about his reported pain level while awaiting their supervisor's arrival; and that ranger Drew confirmed that he could pass his finger through the right handcuff and plaintiff's wrist. (*Id.* at 17–18.) The rangers also contend that it was not unreasonable or excessive for them to handcuff plaintiff with his hands behind his back because the evidence establishes that the two rangers were outnumbered by plaintiff and his two friends, who were each taller and heavier than either ranger. (*Id.* at 18.) Plaintiff counters, arguing that the "videos show Drew struggling for 2 minutes as he tried to remove the handcuffs" in order to add a second set of handcuffs," that "Plaintiff repeatedly complained of pain," and that "Plaintiff is seen grimacing, visibly in pain and turning and moving around trying to reset or readjust his wrists and shoulders at various times." (Doc. No. 93 at 9.) Moreover, plaintiff argues that consideration of the *Graham* factors establish that the use of force in this case was excessive because: (1) the underlying crime was a minor, non-violent traffic offense; (2) plaintiff did not pose an immediate threat to the rangers or anyone else; and (3) plaintiff was not actively resisting arrest or attempting to flee. (*Id.* at 13.) The court finds plaintiff's arguments to be unpersuasive.

First, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, plaintiff version of events, that—the rangers "forced Plaintiff's hands behind his back," he "verbally complained of extreme pain several times," he "was in excruciating pain," he is "seen grimacing, visibly in pain," the rangers "yell[ed] at [him]

11

for complaining of pain," and that the rangers refused to accommodate plaintiff (Doc. No. 93 at 9, 11, 13, 14)—is blatantly contradicted by the body camera video footage before the court on summary judgment. The video evidence shows: plaintiff *voluntarily* placing his arms behind his back; the rangers explaining why he was being placed under arrest and answering all of his questions; and the rangers tending to each of plaintiff's complaints regarding the alleged tightness or positioning of the handcuffs with either an adjustment or an explanation as to why his request could not safely be accommodated at that time. Indeed, at several points during his detention and subsequent arrest, plaintiff noted that he was "okay," "fine," doing or feeling "better" (after an adjustment of the handcuffs), and understood that the rangers were restricted by policy and/or merely doing their jobs. *See, e.g.*, Gruver Video at 19:52–19:53, 20:15; Drew Video at 19:55– 19:59, 20:12–20:14. This undisputable evidence establishes that this is not a case where reasonable factfinders could draw divergent conclusions from what the video evidence shows. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132–39 (9th Cir. 2019) (disputed issues of material fact precluded summary judgment in an action alleging excessive use of force even though the evidence included surveillance footage); *Glenn v. Washington County*, 673 F.3d 864, 878 (9th Cir. 2011) ("The circumstances of this case can be viewed in various ways, and a jury should have the opportunity to assess the reasonableness of the force used after hearing all the evidence."). Rather, here, "[plaintiff's] version of events is so utterly discredited by the record

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

that no reasonable jury could [] believe[] him."[5]  *Scott*, 550 U.S. at 380–81; *Gaddy v. Sherman*, 588 Fed. App'x. 564 (9th Cir. 2014).[6]  Given the compelling nature of the video evidence presented on summary judgment in this case, the court will not "rel[y] on [plaintiff's] visible fiction" and, instead, will view the facts "in the light depicted by the [body camera footage]." *Scott*, 550 U.S. at 380–81; *see also Osotonu v. Lichau*, 2019 WL 1164588, at *3 (N.D. Cal. Mar. 13, 2019) (granting summary judgment in favor of defendant because plaintiff's version was "blatantly contradicted by the record" and noting "a review of the video of the arrest does not show any incidents of excessive force or plaintiff in obvious distress due to tight handcuffs that would set forth a constitutional claim.  While plaintiff presented allegations of excessive force in his verified complaint, he has not addressed the video footage that was presented with the motion for summary judgment and which contradicts his claim"); *Rivera v. Cater*, No. 2:18-cv-00056-WBS-EFB, 2019 WL 5102287, at *4 (E.D. Cal. Oct. 11, 2019) ("While '[t]he mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage,' the court can discount a party's version of the

---

[5]  "There are no allegations or indications that [the body camera footage] was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott*, 550 U.S. at 378.  Indeed, plaintiff concedes that "[t]he events that [gave rise to his complaint] . . . are reflected on the video and audio recordings of the rangers' videocams." (Doc. No. 93-2 at 3.)  In denying defendants' motion to dismiss plaintiff's FAC, the undersigned "strongly encouraged [plaintiff's counsel] to view the video evidence with plaintiff to determine whether [he] can proceed with this case in good faith," and informed plaintiff's counsel that "[p]ursuing litigation without evidentiary support for the allegations made may result in the imposition of sanctions." (Doc. No. 53 at 9 n.3.)  Plaintiff has nonetheless persisted in pursuing his claims, insisting on a version of the facts that is not only unsupported by any evidence but is flatly disproved by the video evidence before the court.  **Plaintiff's counsel is therefore ordered to show cause by April 14, 2020 why sanctions should not be imposed given the clear lack of evidentiary support for plaintiff's allegations and the claims based thereon.**  If plaintiff's counsel takes the position that the video footage does not discredit plaintiff's version of the facts, he is directed to provide the court with exact timestamps from the body camera footage which purportedly show that:  (1) "[t]he rangers *forced* Plaintiff's hands behind his back"; (2) plaintiff "complain[ed] of pain *for approximately a full hour*; and (3) "Plaintiff had no choice but to comply" with the rangers' request for his identification, because he was *coerced* into so doing. (Doc. No. 93 at 24) (emphasis added).

[6]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

facts if it is 'blatantly contradicted by the video evidence.'") (citations omitted); *Brown v. Baudino*, No. CV 15-8924-FMO (JEM), 2019 WL 6887170, at *6 (C.D. Cal. Sept. 13, 2019) ("Plaintiff's self-serving statements that are flatly contradicted by the video recordings do not create a genuine issue of material fact."), *report and recommendation adopted* 2019 WL 5556099 (Oct. 25, 2019), *appeal pending* No. 19-56337 (9th Cir. Nov. 19, 2019).[7]

Second, giving full consideration to the *Graham* factors, the undersigned concludes based upon the undisputed evidence on summary judgment that the force applied by the rangers in handcuffing plaintiff was reasonable and not excessive. Defendants concede that the underlying crime was a minor, non-violent traffic offense and that plaintiff did not pose an immediate threat nor was he actively resisting arrest or attempting to flee. Nevertheless, and as noted above, not only is it long-recognized that law enforcement officers are authorized to use some degree of physical coercion to effect an arrest or investigatory stop, *Graham*, 490 U.S. at 396, the use of handcuffs to do so is a standard practice, *McFarland*, 2017 WL 1348934, at *13. While under some extreme circumstances the use of handcuffs can constitute an excessive use of force when they are applied too tightly, there is no evidence before the court on summary judgment that was the case here. In fact, as established by the undisputed body camera video footage, the handcuffs placed on plaintiff were not excessively tight nor was he being subjected to excessive force in any way, given that: (1) the rangers asked plaintiff if he would be more comfortable sitting inside their air-conditioned vehicle, and he responded that he would rather stand outside; (2) the rangers asked him several times after adjusting his handcuffs if he felt better, and he responded several times that he did; and (3) the rangers attached a second set of handcuffs to the first set to alleviate

---

[7] Plaintiff relies on this court's opinion in *Williams v. Baker*, No. 1:16-cv-01540-DAD-JDP, 2019 WL 1369889 (E.D. Cal. Mar. 26, 2019), to argue that the body camera footage does not blatantly contradict his version of the facts. In *Williams*, this court held that a material issue of fact was in dispute because of a two to three second obstruction in the video evidence in that case, which the undersigned found "would be sufficient time for defendant to injure plaintiff's arm in the manner alleged by plaintiff." *Id.* at *1. This court also found in that case that "the actions of defendant were obscured from view for much longer than two to three seconds; rather, the court perceive[d] that defendant's actions were obscured as long as twelve seconds." *Id.* Unlike *Williams*, however, here plaintiff does not contend that the body camera footage is obscured or that it does not accurately depict his arrest. Indeed, as discussed, he has conceded that the video is accurate. Accordingly, plaintiff's reliance on *Williams* is misplaced.

any pain that plaintiff was complaining about. *See, e.g.*, Gruver Video at 19:52–19:53, 20:15; Drew Video at 19:55–19:59, 20:12–20:14. Moreover, defendant Drew examined the right handcuff and found that he could pass his finger between the handcuff and plaintiff's wrist. Plaintiff also talked to the rangers about matters completely unrelated to any alleged pain or discomfort, including chatting about his car and whether it would get towed, as well as whether he actually had an outstanding warrant in Los Angeles County.

Given the undisputed video evidence, this case is therefore readily distinguishable from those in which courts have found law enforcement officers used excessive force in applying handcuffs. *See e.g.*, *Wall v. Cty. of Orange*, 364 F.3d 1107 (9th Cir. 2004) (finding sufficient evidence of excessive force where an officer suddenly and without warning grabbed the plaintiff by his wrist, handcuffed his wrists extremely tight, and threw him upside down and head first into a patrol car); *Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003) (affirming the denial of summary judgment on grounds of qualified immunity where the plaintiff alleged she was kept handcuffed for thirty minutes despite complaints that her handcuffs were too tight); *Alexander*, 64 F.3d at 1322–23; *Palmer*, 9 F.3d at 1434–36. Thus, while "[t]he issue of tight handcuffing is *usually* fact-specific and is likely to turn on the credibility of the witnesses," *LaLonde*, 204 F.3d at 959 (emphasis added), the comprehensive and undisputed video evidence before the court on summary judgment here distinguishes this case, as well as others, from what might be described as the usual one. *See Stevenson v. Jones*, 254 F. Supp. 3d 1080, 1091 (N.D. Cal. 2017) ("The several cases reviewed by this court in which a plaintiff managed to raise a triable issue of fact involved significantly more force than used in Stevenson's case, greater injuries to the hands, and/or refusals by officers to loosen handcuffs once alerted by the handcuffed person that the handcuffs were painfully tight."); *Shaw v. City of Redondo Beach*, No. CV 05-0481 SVW (FMOx), 2005 WL 6117549, at *8 (C.D. Cal. Aug. 23, 2005) ("In those tight handcuffing cases in which courts have found excessive force, the arrestee was either in visible pain, complained of pain, alerted the officer to pre-existing injuries, sustained more severe injuries, was in handcuffs for a longer period of time, asked to have the handcuffs loosened or released, and/or alleged other forms of abusive conduct in conjunction with the tight handcuffing."); *see also Reyes v. City of*

*Santa Ana*, No. SA CV 18-1537-DOC (ADSx), 2019 WL 5198172, at *8 (C.D. Cal. Aug. 28, 2019) (granting summary judgment in favor of defendants on a claim of excessive force due to handcuffs being allegedly applied too tight).

Third, plaintiff's reliance on the views of police-practices expert Brian Brewer is unavailing. As an initial mater, it appears that plaintiff did not timely disclose that he would be relying on Brewer's expert opinion, since Brewer was not even retained by plaintiff until April 4, 2019, when the deadline for expert disclosures under the governing scheduling order in this case was March 29, 2019. (*See* Doc. Nos. 95 at 6; 95-4 at 4; 72 at 1.) Setting aside that concern, however, the court finds that Brewer's expert opinion is of no import. Brewer opines that, [b]ased on his review of the listed materials, . . . [the rangers] used more force than reasonably necessary by handcuffing [plaintiff] with his hands behind his back despite being told by [him] that being cuffed behind his back was causing extreme pain." (Doc. No. 93-10 at 9.) Brewer opines that the rangers "should have sought other reasonable methods of restraint, if mechanical restraint was even necessary, knowing that handcuffing [plaintiff] with his hands behind his back could likely cause injury." (*Id.* at 13.) Brewer notes that the rangers could have handcuffed plaintiff with his hands in front of his body, or that they should have been provided a belly chain, or that they could have placed plaintiff in the rear of the police vehicle, where he could have been monitored until the rangers' supervisor arrived. (*Id.*) However, a plaintiff cannot avoid summary judgment "by simply producing an expert's report that an officer's conduct . . . was imprudent, inappropriate, or even reckless." *Lal*, 746 F.3d at 1118 (internal quotation marks and citation omitted). In the Fourth Amendment context, whether the force used is reasonable is to be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Here, the court finds that Brewer's recommendations do not establish that the rangers employed excessive force in violation of the Constitution because the rangers were not required to "avail themselves of the least intrusive means of responding" but rather "need only act 'within that range of conduct [that courts] identify as reasonable," *Henrich*, 39 F.3d at 915. The court has already concluded that the amount of force used by the rangers— handcuffing plaintiff after the discovery of a warrant for his arrest—was within the range of

reasonable conduct. In fact, the rangers' conduct was far from unreasonable, as the rangers timely responded to each of plaintiff's complaints of pain and implemented measures to alleviate any discomfort he may have been feeling.

For these reasons, the court concludes that defendants Drew and Gruver are entitled to summary judgment as a matter of law on plaintiff's first claim alleging excessive force in violation of the Fourth Amendment.

## C.    Plaintiff's Unlawful Seizure Claims Fail as a Matter of Law

Defendants Drew and Gruver next move for summary judgment in their favor on plaintiff's second claim, in which it is alleged that they unreasonably searched and seized him on February 20, 2016. When an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen," a seizure has occurred. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). "The Fourth Amendment's requirement that searches and seizures be founded upon an objective justification[] governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall*, 446 U.S. 544, 551 (1980) (internal quotation marks and citation omitted). However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry*, 391 U.S. at 19 n.16. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002).

The rangers contend that approaching plaintiff and his friends to inquire about the drone did not constitute a seizure; that even if it did, they had reasonable suspicion to believe plaintiff and his friends were violating park regulations; and that arresting plaintiff based on the active warrant for his arrest was not unreasonable. (Doc. No. 91-1 at 22–23.) Plaintiff counters that the rangers' initial encounter with him constituted an unlawful seizure because he did not own the drone and was not driving the car that had the drone controller on its roof at the time the rangers approached him and his friends. (Doc. No. 93 at 22–23.) Plaintiff also argues that it is not clear that the use of drones was prohibited in the park at the time of the incident. (*Id.* at 25.) Even if

the initial encounter was justified, plaintiff argues, the rangers had no reason to believe that there was an outstanding warrant for his arrest and had no basis to ask plaintiff for his identification. (*Id.* at 23–24.)  Again, the court is unpersuaded by plaintiff's arguments.

Plaintiff's emphasis on his initial encounter with the rangers is misplaced.  Even if the court concludes that the rangers had no basis upon which to initially approach plaintiff and his friends, the undisputed fact that plaintiff voluntarily complied with the rangers' request for his identification and the undisputed fact that a subsequent review of his identification revealed that he had an outstanding warrant for his arrest provided the rangers with an independent and constitutionally adequate basis upon which to arrest (and therefore seize) plaintiff.  *See, e.g.*, *Drayton*, 536 U.S. at 201 ("Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means."); *Underwood*, 717 F.2d at 485 ("[A]n arrest warrant authorizes the police to deprive a person of his liberty.") (internal quotation marks and citation omitted).  Plaintiff contends that, "but for the illegal stop and asking Plaintiff for his driver's license, the warrant would not have been discovered and the arrest would not have ensued."  (Doc. No. 93 at 23.)  Even that were true, it does not support a claim that the rangers' seizure of plaintiff was unconstitutional.  Plaintiff's contention that he "had no choice but to comply" with the rangers request for his driver's license is unsupported by any facts, analysis, or evidence and, in fact, is belied by the rangers' body camera footage, which shows ranger Gruver calmly asking plaintiff and his friends if they have identification and each of them *voluntarily* providing her with their driver's licenses in response.  Gruver Video at 19:34.

Finding none of plaintiff's arguments to the contrary persuasive, the court finds that defendants Drew and Gruver are entitled to summary judgment as a matter of law on plaintiff's second claim alleging an unreasonable seizure in violation of the Fourth Amendment.[8]

---

[8]  The rangers also assert a qualified immunity defense, which is analyzed under a two-part test: (1) do the facts alleged demonstrate that an officer violated a constitutional right; and (2) if the answer to (1) is yes, was that constitutional right clearly established at the time of the injury? *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).  Here, because the undisputed facts before the court on summary judgment demonstrate that the rangers' conduct did not violate plaintiff's constitutional rights, there is no need to proceed to the second step.

**D.** **Plaintiff's Battery Claims Fail as a Matter of Law**

Defendants next move for summary judgment on plaintiff's third claim, alleging that he was battered by the rangers when they detained and arrested him. (Doc. No. 91-1 at 25.) A plaintiff may state a battery claim against a law enforcement officer in California if he can allege and show the use of unreasonable force. *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1129 (9th Cir. 2010) ("Under California law, a plaintiff bringing a battery claim against a law enforcement official has the burden of proving the officer used unreasonable force."); *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008) (holding "we cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct," and therefore a common law battery claim "requires proof that [the officer] used unreasonable force"). Here, the court has already found that plaintiff's claim for excessive force in violation of the Fourth Amendment fails as a matter of law. Accordingly, the court concludes that plaintiff's battery claim also fails as a matter of law.

**E.** **Plaintiff's IIED Claims Fail as a Matter of Law**

Defendants next move for summary judgment on plaintiff's fourth claim, alleging intentional infliction of emotional distress. (Doc. No. 91-1 at 25–26.) Under California law, the elements for an IIED claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). To be sufficiently extreme and outrageous conduct, the actions alleged "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) (quotations omitted); *see also Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993).

The undisputed evidence before the court on summary judgment establishes that the rangers did not engage in conduct that was "outrageous" or "extreme" and that they did not act with the intention of causing, or recklessly disregarded the probability of causing, plaintiff to suffer severe emotional distress. The body camera footage shows that, prior to being handcuffed,

plaintiff was told why he was being arrested and was asked to place his hands behind his back, which he did. Each time that plaintiff complained about the handcuffs being too tight or otherwise causing him discomfort, the rangers listened to plaintiff's concerns and attempted to alleviate any pain that he was suffering. The rangers informed plaintiff that they could not handcuff his hands in front of him until their supervisor arrived, but otherwise attempted several adjustments to help alleviate the pain caused by the handcuffs. The rangers offered plaintiff water, asked if he would like to sit inside their air-conditioned patrol vehicle instead of outside in the heat, and otherwise engaged with plaintiff in a respectful and civilized manner. In other words, the rangers applied minimal force to handcuff plaintiff pursuant to an outstanding arrest warrant, were not hostile or aggressive, tried to the best of their abilities to adjust the handcuffs until their supervisor arrived, and offered plaintiff food, water, and shelter from the heat.

Accordingly, the court finds that defendants are entitled to summary judgment as a matter of law on plaintiff's fourth claim, alleging intentional infliction of emotional distress.

**F.    Plaintiff's Negligence Claim Fails as a Matter of Law**

Finally, defendants move for summary judgment on plaintiff's fifth claim alleging negligence due to the rangers' failure to use reasonable care. (Doc. No. 91-1 at 26.) In California, claims alleging that an officer breached her duty to use reasonable care "are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims." *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013). Here, the court has already found that plaintiff's claim for unreasonable or excessive force in violation of the Fourth Amendment fails as a matter of law. Accordingly, the court concludes that plaintiff's negligence claim based on a duty to use reasonable force also fails as a matter of law.

## CONCLUSION

For the reasons set forth above,

1.    Defendant United States Department of the Interior Park Service, Death Valley National Park is terminated from this action;

2.    Defendants' motion for summary judgment (Doc. No. 91) is granted;

3.    Each of plaintiff's claims fail as a matter of law;

20

4.     Judgment is to be entered in favor of defendants and against plaintiff; and

5.     Plaintiff's counsel is ordered to show cause by April 14, 2020 why sanctions should not be imposed given the clear lack of evidentiary support for plaintiff's allegations and the claims based thereon, as addressed in fn.5 above.

IT IS SO ORDERED.

Dated:   **March 23, 2020**     _____

UNITED STATES DISTRICT JUDGE